UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: Procter & Gamble Aerosol Products Marketing and Sales Practices Litigation | : : : : : | Case No. 2:22-md-3025<br><br>Judge Michael H. Watson<br><br>Magistrate Judge Chelsey Vascura |

This document relates to: <u>ALL CASES</u>

**NON-SETTLING PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO NON-SETTLING PLAINTIFFS' OPPOSITION MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

The Non-Settling Plaintiffs ("NSPs"), through the undersigned, respectfully submit this short reply to respond to certain points raised in Defendant Procter & Gamble's ("P&G's") response to NSPs' opposition to the motion for preliminary approval of class action settlement. *See* ECF 38. Three points in P&G's response merit a reply.

**A. Numerous Plaintiffs and Law Firms Oppose the Proposed Settlement**

P&G essentially tells this Court to ignore the substantial structural and substantive concerns with the proposed settlement because they are purportedly voiced by a single law firm representing two named plaintiffs. *See* P&G Resp. at 1. Not so. As contemplated during the June 1, 2022 status conference, for efficiency's sake, NSPs' response was a single consolidated pleading intended to reflect the views of the numerous NSPs. NSPs and their counsel coordinated after the opportunity to review discovery to submit a single pleading. Plaintiffs in at least 9 cases (and their 10 law firms) actively oppose the proposed settlement. *See* Honik Decl. (Ex. A hereto) at ¶ 2. P&G's insinuation that all of this is nothing more than sour grapes of a single lawyer at a single

1

firm simply is untrue. Even it if were, that would not negate the serious structural and substantive flaws of the proposed settlement set forth in NSPs' brief (*see generally* ECF 32).

Underscoring the above points, of the twenty-six cases in this proceeding, only fourteen signed onto the Motion for Preliminary Approval.[1] Of the fourteen 'supporting cases' (out of 26 total), at least two were filed by the same counsel in the same district (this one),[2] another was filed *after* the mediation took place,[3] one is mistakenly identified as supportive when that plaintiff and his counsel *never attended the mediation or signed the settlement and actually opposes it*,[4] and a number of SPs' counsel law firms—including some attorneys the proposed settlement proffers as Class Counsel—first filed cases or entered appearances on the same day the proposed settlement was signed or thereafter.[5]

---

[1] *See* signatories to Motion for Preliminary Approval, ECF No. 23 (listing counsel as enrolled in the following cases: *Aviles*, *Baker*, *Bernsee*, *Blake*, *Canaday*, *Casolari*, *Esquivel*, *Hernandez*, *Kelley*, *Labella*, *Martinez*, *Mills*, *Pickens*, and *Velasques*).

[2] *Esquivel*, No. 21-762 (S.D. Ohio filed Dec. 8, 2021), was filed by counsel who had previously filed *Velasques*, No. 21-723 (S.D. Ohio filed Nov. 19, 2021). *Kelley*, No. 21-785 (S.D. Ohio filed Dec. 17, 2021), was filed by counsel who had previously filed *Baker*, No. 21-734 (S.D. Ohio filed Nov. 23, 2021).

[3] *See Casolari*, No. 22-235 (S.D. Ohio filed May 2, 2022).

[4] James DeThrow, the named plaintiff in *DeThrow*, No. 22-1997, is represented by Mr. Paul Geske, Esq. of McGuire Law P.C. (*see* docket sheet). Neither Mr. DeThrow nor his counsel ever agreed to the settlement, and in fact take no position on it. *See* Ex. A at ¶ 2. Yet, Mr. DeThrow is listed as a *settling plaintiff* in the proposed settlement and incorrectly denominated by SPs as being represented by Mr. Richard Wayne, Esq. (*see* ECF 39-2) (Richard Wayne Decl.).

[5] *See, e.g.*, *Labella*, No. 22-1992, ECF 14 (May 27, 2022 PHV motion for Freed Kanner London & Millen law firm); *Blake*, No. 21-0794, ECF 11 (May 27, 2022 PHV motion for Shub law firm); *Hernandez*, 22-1994, ECF 14 (May 27, 2022 PHV motion for Poulin Willey Anastopoulo law firm); *Martinez*, No. 22-1993, ECF 22, 23, & 27 (April 25, 2022 PHV motions for Aylstock, Witkin, Kreis & Overholtz law firm & May 30, 2022 PHV motion for Bradley Grombacher law firm); *Pickens*, No. 21-786, ECF 14 (May 27 PHV motion for Paul LLP); *see also Casolari*, No. 22-235 (filed in S.D. Ohio on May 2, 2022).

The point is, this is not a chicken-little scenario with a lone squeaky-wheel plaintiffs' counsel. NSPs' concerns with the proposed settlement are legitimate and substantial; NSPs compromise a sizeable block of plaintiffs and firms that oppose the proposed settlement; and there never was and still remains no complete or near unanimity of support for the proposed settlement.

**B. The 'FDA Alert' Cited by Defendant Only Reinforces the FDA Guidance That Is Stricter Than the Settlement's Proposed Injunctive Relief**

In response to NSPs' argument that the proposed settlement's injunctive relief replaces FDA's *Q3C Guidance* with a more lenient standard, P&G (and SPs) cite to a recently published 'FDA Alert.'[6] The Alert, they argue, establishes that a manufacturer's duty with respect to benzene is to limit its presence to 2 ppm, and where benzene exists "above the limit of detection but below 2 ppm (which would include those products testing up to 1 ppm benzene), the FDA states that manufacturers need only be prepared to share with the agency their test results and the potential source of the benzene to assist with the FDA's analysis." SP Reply at 12. Accordingly, they argue that the proposed settlement—by applying a 1 ppm standard—is "actually *stricter* that the 2 ppm standard.]" *Id.* at 13-14 (emphasis in original).

The FDA Alert says no such thing. Rather, it reinforces the *Q3C Guidance*'s allowance for 2 ppm only where benzene's use is unavoidable to achieve a therapeutic effect, specifically referring manufacturers to that standard:

> **Drug manufacturers should avoid using benzene in the manufacturing process**
>
> Manufacturers should not use benzene in the manufacture of drugs. The … *Q3C Impurities: Residual Solvents guidance* and companion document *Q3C Tables and List* provide guidance on limited cases where the presence of benzene may be tolerated. Specifically, the

---

[6] *See* P&G Resp. at 17 (citing FDA, FDA alerts drug manufacturers to the risk of benzene contamination in certain drugs (last updated June 9, 2022), *avail. at* https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-alerts-drug-manufacturers-risk-benzene-contamination-certain-drugs? ("FDA Alert"); *see also* SP Reply at 12-14 (same).

3

> ICH Q3C guidance explains that Class 1 solvents such as benzene should <u>not be employed in the manufacture of drug substances, excipients, or drug products because of their unacceptable toxicity</u>. The guidance notes that if benzene use is <u>unavoidable to produce a drug product with a significant therapeutic</u> advance, then its levels should be restricted to 2 parts per million (ppm), unless otherwise justified.

FDA Alert at ¶¶ 4-5 (underlined emphasis added). There are "limited cases where the presence of benzene may be tolerated"; namely, where benzene is "**<u>unavoidable</u>** to produce a drug product with a significant therapeutic advance[.]" *Id.* (emphasis added).

P&G has made no showing that benzene is "unavoidable" in the manufacture of its at-issue products. Indeed, the fact that competing products remain on the market free of any benzene confirms that benzene is avoidable. Thus, P&G's (and SPs') characterization of the FDA Alert is completely unsupported, as the Alert only highlights the proposed settlement's substitution of a more lenient standard than the one espoused by FDA.

**C. Defendant's Response Ignores the NSPs' Structural and Substantive Concerns with the Proposed Settlement**

P&G's response does not address NSPs' structural concerns with the proposed settlement. That is, under the Multidistrict Litigation process, courts should carefully solicit and vet applications for leadership on the plaintiffs' side to avoid structural conflicts that may result in structural collusion. *See* NSPs' Resp. at 12-13 (citing, inter alia, 28 U.S.C. § 1407(a)). The MANUAL FOR COMPLEX LITIGATION (Fourth), § 10, echoes this. *Id.* (citing same).

P&G's race to ink a settlement with any group of plaintiffs' counsel willing to sign presents the very concerns identified by the federal judiciary as those which must be guarded against in a multi-district litigation with competing cases and interests. Only by engaging in the process to vet and appoint plaintiff-side leadership that represent all interests in a way that will guard against structural collusion can the best interests of a proposed class be served. In fact, Rule 23(g) requires

4

just this. *See* Fed. R. Civ. P.23(g) (identifying factors the court "must consider" in appointing class counsel). To comply with Rule 23(g), 28 U.S.C. §1407, and the guidance thereunder, the Court should pause consideration of the proposed settlement, evaluate and appoint plaintiffs' side leadership under Rule 23(g), permit that appointed leadership to fully evaluate the proposed settlement and negotiate modifications as necessary, and present a revised proposed settlement to the Court.

As to NSPs' substantive concerns, P&G glosses over how the proposed settlement offers *less* than P&G's prior voluntarily recall program, which has now expired. The proposed settlement will likely result in cash payments less than the already-meager payment of $25,000, reflecting a massive windfall to P&G—a windfall that it does not dispute. That P&G paid only $25,000 over an approximate five-month period during which its prior recall program was open augurs a much less likely payout under the proposed settlement during a narrow ninety-day claims period. Simply, the total value of the monetary relief under the proposed settlement is largely illusory because the bulk of it will revert back to P&G. Additionally, the prior recall program offered five or more vouchers, whereas the proposed settlement caps vouchers at three. Again, this is *less* value under the proposed settlement than P&G's prior (since expired) recall program. P&G does not deny this in its response, either

\* \* \*

For the foregoing reasons, as well as those expressed in NSPs' original response (ECF 32), the Court should deny the motion for preliminary approval of the proposed settlement, and conduct a process to select and appoint plaintiff-side leadership consistent with Rule 23(g).

5

Respectfully submitted,

*/s/ Ruben Honik*
Ruben Honik
**Honik LLC**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Tel: 267-435-1300
ruben@honiklaw.com

*Counsel for Plaintiffs Amselem and Clayton and on behalf of Non-Settling Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on August 18, 2022, this document was served on all parties of record via email through the Court's CM/ECF system.

By: <u>*/s/ Ruben Honik*</u><br>
Ruben Honik